In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-525 CV


____________________



RICHARD K. REEDER, Appellant



V.



GREGORY ALLPORT AND DEBORAH KAY ALLPORT, 


INDIVIDUALLY AND AS NEXT FRIENDS OF JANNA KAY ALLPORT AND


DERRICK GREGORY ALLPORT, Appellees






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 43,915






OPINION


 The wife and children of Gregory Allport recovered damages for past and future loss
of consortium arising from the accidental shooting of Gregory Allport by Richard K. Reeder. 
On appeal, Reeder challenges the factual sufficiency of the evidence supporting the jury's
verdict and contends the jury awarded excessive amounts for these categories of damages. 
We hold the jury's findings are supported by factually sufficient evidence and the awards are
not excessive. Consequently, we affirm the judgment.

 Texas law recognizes causes of action for the loss of spousal and parental consortium. 
Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990); Whittlesey v. Miller, 572 S.W.2d 665,
666 (Tex. 1978). Spousal consortium "primarily consists of the emotional or intangible
elements of the marital relationship." Whittlesey, 572 S.W.2d at 666. A spouse may recover
for the loss of the injured spouse's affection, solace, comfort, companionship, society,
assistance, and sexual relations necessary to a successful marriage. Id. at 666. A child may
recover for loss of consortium when a parent suffers serious, permanent, and disabling
injuries. Reagan, 804 S.W.2d at 468. Factors considered in determining the amount of
nonpecuniary damages for loss of the parent's love, affection, protection, emotional support,
services, companionship, care, and society include "the severity of the injury to the parent
and its actual effect upon the parent-child relationship, the child's age, the nature of the
child's relationship with the parent, the child's emotional and physical characteristics, and
whether other consortium giving relationships are available to the child." Id. at 467. Loss
of consortium does not include an element of mental anguish. Id. Loss of consortium
concerns "subjective states which present some difficulty in translating the loss into a dollar
amount." Whittlesey, 572 S.W.2d at 667. The difficulty in quantifying the emotional and
intangible elements of non-economic damages does not insulate the verdict from appellate
review. Complaints of excessive damages are subject to a factual sufficiency standard of
review. See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998); Pope v.
Moore, 711 S.W.2d 622, 624 (Tex. 1986) (standard for remittitur of consortium and other
damages). We consider and weigh all of the evidence, and set aside the verdict only if it is
so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and
unjust. Ellis, 971 S.W.2d at 406-07.

 On October 17, 2003, Richard Reeder shot Gregory Allport in the neck. Gregory
survived, spent twenty days in the hospital, spent another forty-two days in a Houston
rehabilitation facility, and spent two and a half weeks in a Beaumont rehabilitation facility.
As a result of permanent paralysis, Gregory is confined to a wheelchair. Nineteen months
elapsed between the incident and the trial. Gregory and Deborah Allport had been married
23 years at the time of the trial. The jury awarded Deborah $76,000 for past loss of
consortium and $1,000,000 for future loss of consortium. The Allports' daughter Janna was
seventeen at the time of the incident and nineteen at the time of trial. The jury awarded Janna
$100,000 for loss of consortium in the past and $25,000 for loss of consortium in the future.
The Allports' son Derrick was in the ninth grade when his father was shot. The jury awarded
Derrick $100,000 for loss of consortium in the past and $75,000 for loss of consortium in the
future. Reeder challenges the jury's verdict on past loss of consortium for the children and
both past and future loss of consortium for Deborah. Other damages found by the jury but
not challenged on appeal include the following: $47,101 for past lost earning capacity;
$476,000 for future lost earning capacity; $50,000 for past pain and mental anguish; 
$800,000 for future pain and mental anguish; $100,000 for past disfigurement; $250,000 for
future disfigurement; $100,000 for past physical impairment; $150,000 for future physical
impairment; $245,000 for past medical care; $100,000 for future medical care; $100,000 for
cost of vehicles; $30,000 for cost of wheelchairs; $10,000 for accessibility repairs to the
home; $4,400 for past loss of household services; $60,000 for future loss of household
services; and punitive damages in the amount of $1,000,000.

 Reeder concedes that Gregory Allport suffered a severe and disabling injury. The
consortium damages awarded by the jury are excessive, he argues, because as a result of the
accident, Gregory Allport's relationship with the other members of his family were
strengthened, not destroyed. Reeder argues that, unlike cases in which the injured spouse or
parent dies or suffers a brain injury that prevents meaningful interplay with the members of
the family, Allport still occupies his place as husband and father, and provides the affection
and companionship compensated by awards for loss of consortium. Certainly, the Allports'
testimony reveals the blessings of a strong marriage and devoted children. Although his wife
and each of his children admitted that positive benefits still flow from their relationships with
him, Gregory Allport's devastating physical injuries profoundly altered those relationships. 


 After the shooting, Gregory was physically unavailable to the family for nine weeks. 
Janna Allport testified that Deborah took up the burden of being available for the family
while Gregory recuperated. During that time, Gregory and Deborah learned how to
catheterize Gregory every four hours and to manually stimulate his bowels to induce
defecation. They also learned how to properly treat his skin to prevent ulcers, how to bathe,
and how to transfer Gregory into a wheelchair. In the months following the accident,
Deborah had to bathe and dress Gregory because he was confined to a bed and could not
perform those basic functions for himself. For a time, Gregory was depressed because he had
not yet accepted that he was paralyzed. According to Gregory, adapting the daily lives of the
members of the family to accommodate his disability was at times very stressful and
irritating.

 While Gregory recuperated in Houston, the children could only see him on weekends. 
Janna was a varsity cheerleader and did not get to see him much because her school's football
team was in the playoffs. Because of the accident and subsequent rehabilitation, Gregory
was not present when Janna was named the football sweetheart on senior night and he did
not attend her high school graduation ceremony. According to Deborah, Janna had trouble
coping with her father's condition. She was rarely at home or would leave the room when
Gregory struggled to turn over. Derrick Allport became withdrawn and reacted to the stress
of his father's injury and hospitalization by sleepwalking. Both children reported having to
help their father get into his wheelchair after falling. Derrick had to drag his nude father
from the shower to the living room couch. Derrick feels that he has to help and protect his
father. Janna agreed there was a role reversal with her father because of his difficulty
performing basic tasks like cooking. Derrick reported that Gregory still helps him with his
homework and that the family has grown closer since the shooting. Gregory will give Janna
away at her June wedding and she still confides in her father. Gregory and his son cannot
go camping or play football like they used to; now their activities together are limited to
watching television.

 Because the spinal cord injury left him without any feeling below the armpits, at age
48, Gregory can no longer engage in sexual intercourse with Deborah. Deborah must sleep
on the couch because Gregory cannot roll over if she is in the bed with him. Although she
loves her husband dearly, she described having "days that I don't want to wake up, and that
I want to run out the door and hide because of the pressure and the loss of emotional contact
with my husband, physical contact."

 Reeder points out that Deborah, Janna, and Derrick have not lost Gregory's love and
comfort. However, love and comfort are not the only manifestations of parental consortium. 
The children were teenagers when the shooting occurred. Gregory's injuries were severe and
altered both the physical activities in which he can engage with his children and the way in
which they now must perform simple tasks that consume everyday life. Only the $100,000
awards of past lost parental consortium are challenged on appeal. The children experienced
a period of physical separation from their father, followed by a period of emotional turmoil
until they settled into their new roles in the family. Although Reeder did not destroy the
children's consortium-giving relationship with their father, the evidence of Janna's and
Derrick's loss of consortium is not so weak or the evidence to the contrary so overwhelming
as to make the jury's damages finding manifestly unjust, shocking to the conscience, or a
clear demonstration of bias. We hold that factually sufficient evidence supports the findings
for loss of parental consortium in the past, and that the jury's award for this element of
damages is not excessive.

 Similarly, the Allports' marriage endured through a grueling hospitalization and
rehabilitation. Reeder does not direct our attention to any evidence that Gregory provided
the comfort and companionship of a marriage partner to Deborah during that time. Reeder
does point to several examples in the record where Deborah revealed that her husband
currently provides limited companionship and comfort to her. For instance, when asked if
Gregory has been supportive as she juggled jobs, teenagers, and his injuries, Deborah replied,
"Of course. He tells me to sit down and take a rest and get off my feet. I need to eat. I'm
not taking care of myself. Sit down, quit smoking, quit drinking coffee, eat. He's constantly
telling me -- trying to tell me to slow down and supporting me." The permanent loss of 
sexual relations and his shift from a role as helpmate to one as a dependent provides the jury
with factually sufficient evidence of a loss of consortium in the future. We hold the jury's
findings on past loss of spousal consortium and future loss of spousal consortium are
supported by factually sufficient evidence and that the amounts awarded by the jury on these
elements of recovery are not excessive. We overrule all of the issues raised on appeal and
affirm the judgment. 

 AFFIRMED.

 ______________________________

 STEVE McKEITHEN

 Chief Justice


 


Submitted on November 2, 2006

Opinion Delivered March 8, 2007


Before McKeithen, C.J., Gaultney and Kreger, JJ.